No. 24-1088

UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

WORLD SHIPPING COUNCIL,
*Petitioner,*

v.

FEDERAL MARITIME COMMISSION AND UNITED STATES OF AMERICA,
*Respondents*.

ON PETITION FOR REVIEW OF AN ORDER OF THE
FEDERAL MARITIME COMMISSION

## BRIEF FOR RESPONDENT FEDERAL MARITIME COMMISSION

PHILLIP "CHRIS" HUGHEY
*General Counsel*
HARRY J. SUMMERS
*Attorney-Advisor*
FEDERAL MARITIME COMMISSION
800 N. CAPITOL ST., N.W.
WASHINGTON, D.C. 20573
PHONE: (202) 523-5740
phughey@fmc.gov
hsummers@fmc.gov

December 2, 2024

## CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES

Pursuant to D.C. Circuit Rule 28(a)(1), respondent Federal Maritime Commission (Commission) submits its Certificate as to Parties, Rulings, and Related Cases.

**(A)    Parties and Amici**. The participants to the rulemaking proceeding before the Federal Maritime Commission, including the World Shipping Council, are listed in Respondent Federal Maritime Commission's Certified Index to the Record as to Final Rule (June 3, 2024) (Doc. No. 2057667).

The parties to this proceeding are the World Shipping Council, as Petitioner, and the Federal Maritime Commission and the United States of America, as Respondents. There are no amici curiae at this time.

**(B)    Ruling Under Review**. The ruling under review is the Commission's order and final rule on Demurrage and Detention Billing Requirements, 89 Fed. Reg. 14330 (Feb. 26, 2024) (JA __).

**(C)    Related Cases**. The Commission knows of no related cases.

# TABLE OF CONTENTS

Page

INTRODUCTION ................................................................................................1

COUNTERSTATEMENT OF JURISDICTION ..................................................5

COUNTERSTATEMENT OF THE ISSUES.......................................................6

STATUTES AND RULES ...................................................................................6

COUNTERSTATEMENT OF THE CASE...........................................................6

I.     The Applicable Legal Framework .............................................................6

II.    Proceedings Before the Commission..........................................................7

       A.     Commission Proceedings Prior to OSRA 2022 ..................................7

       B.     Congress Enacts OSRA 2022 ..............................................................9

       C.     The Commission's Implementation of OSRA 2022............................11

III.   Proceedings Before This Court....................................................................18

SUMMARY OF ARGUMENT ..........................................................................19

ARGUMENT ......................................................................................................20

I.     The Council Has Failed to Provide Evidence Sufficient
       to Support Its Claim of Representational Standing .....................................20

       A.     Standing Requirements ......................................................................20

       B.     As an Association, the Council Must Provide Sufficient
              Evidence of Its Members' Standing, But It Has Failed to Do So ........21

II.    The Final Rule Permissibly Defines Which Parties May Be Billed for
       Demurrage and Detention Charges .............................................................22

       A.     The Commission Had Ample Authority to Issue the
              Regulation Under OSRA 2022 and 46 U.S.C. § 41102(c)................23

1. The Council Fails to Show the Commission Lacks Authority Under OSRA 2022 ..............................................26

2. The Council Fails to Show the Commission Lacks Authority Under 46 U.S.C. § 41102(c).............................29

B. The Billed-Parties Rule Easily Survives the Deferential Review Applicable to "Arbitrary and Capricious" Claims .................31

1. The Regulation Was Reasonable and Reasonably Explained........31

2. The Council Fails to Show the Rule Is Arbitrary and Capricious ....................................................................................33

III. The Council Lacks Standing for Its NEPA Claim, and in Any Event the Commission's Environmental Analysis Was Reasonable......................41

IV. The Council's Request to Add Inquiry Emails to the Administrative Record Should Be Denied ...................................................45

CONCLUSION .......................................................................................49

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Activis Elizabeth LLC v. FDA*, 625 F.3d 760 (D.C. Cir. 2010) ..........................30, 33

*Beyond Nuclear, Inc. v. NRC*, 113 F.4th 956 (D.C. Cir. 2024) ........................41, 43

*Chamber of Commerce v. EPA*, 642 F.3d 192 (D.C. Cir. 2011) ............................22

*Evergreen Shipping Agency (Am.) Corp. v. FMC*, 106 F.4th 1113
    (D.C. Cir. 2024) ...................................................................................4, 34–35

*FCC v. Fox Television Stations, Inc.*, 556 U.S. 502 (2009) ..............................31–32

*Flyers Rights Educ. Fund, Inc. v. U.S. Dep't of Transp.*,
    957 F.3d 1359 (D.C. Cir. 2020)....................................................................20

*Gunpowder Riverkeeper v. FERC*, 807 F.3d 267 (D.C. Cir. 2015)........................42

*Loper Bright Enters. v. Raimondo*, ___ U.S. ___,
    144 S. Ct. 2244 (2024)..............................................................3, 23–25, 29, 31

*Lujan v. Defs. of Wildlife*, 504 U.S. 555 (1992) ......................................................20

*Lujan v. Defs. of Wildlife*, 497 U.S. 871 (1990) ......................................................41

*Marin Audubon Soc'y v. FAA*, No. 23-1067, ___ F.4th ___,
    2024 WL 4745044 (D.C. Cir. Nov. 12, 2024)................................................43

*NextEra Energy Res., LLC v. FERC*, 118 F.4th 361 (D.C. Cir. 2024)...................31

*Safe Skies Clean Water Wisc., Inc. v. U.S. Air Force*, Civ. No. 21-634,
    2022 WL 22626434 (D.D.C. Sept. 30, 2022).................................................45

*Sierra Club v. EPA*, 292 F.3d 895 (D.C. Cir. 2002)................................................21

*Sinclair Wyoming Refining Co. LLC v. EPA*, 114 F.4th 693
    (D.C. Cir. 2024) ........................................................................4, 31–32, 36, 39

*Skidmore v. Swift & Co.*, 323 U.S. 134 (1944) ..............................................23, 25, 29

*Standing Rock Sioux Tribe v. U.S. Army Corps of Eng'rs*,
    985 F.3d 1032 (D.C. Cir. 2021) ..............................................................40, 44

*Summers v. Earth Island Inst.*, 555 U.S. 488 (2009) ..................................21

*TCW v. Evergreen Shipping Agency (Am.) Corp.*, FMC No. 1966(I),
    2022 WL 18068977 (FMC Dec. 29, 2022), *vacated and*
    *remanded*, 106 F.4th 1113 (D.C. Cir. 2024) ......................................35

*Transp. Div. of the Int'l Ass'n of Sheet Metal v. Fed. R.R. Admin.*,
    10 F.4th 869 (D.C. Cir. 2021) ................................................................45

*Twin Rivers Paper Co. LLC v. SEC*, 934 F.3d 607 (D.C. Cir. 2019) ............2, 20–22

*Viasat, Inc. v. FCC*, 47 F.4th 769 (D.C. Cir. 2022) ..................................42

*Walter O. Boswell Mem'l Hosp. v. Heckler*, 749 F.2d 788 (D.C. Cir. 1984) ..........47

**Statutes and Regulations**

5 U.S.C. § 553 ..................................................................................................39

5 U.S.C. § 706 ..............................................................................................40, 46

5 U.S.C. § 706(2)(A) ....................................................................................3, 23, 31

5 U.S.C. § 706(2)(C) ......................................................................................2, 22

28 U.S.C. § 2112(b) ......................................................................................45, 47

28 U.S.C. § 2342(3)(B) ........................................................................................5

42 U.S.C. § 4336(b)(2) ........................................................................................43

46 U.S.C. § 41102(c) .......................... 3, 5, 7, 10–11, 16, 23–24, 26–29, 33, 36, 39

46 U.S.C. § 41102(d) ...................................................................47

46 U.S.C. § 41104(a) .....................................................................7

46 U.S.C. § 41104(a)(15) .........................................................28, 40

46 U.S.C. § 41104(a)(15)(B) ..........................................................3

46 U.S.C. § 41104(d) .........................................................10, 33, 40

46 U.S.C. § 41104(d)(2) ...............................................................27

46 U.S.C. § 41104(f) .....................................................................10

46 U.S.C. § 46105(a) ..................................................................5, 7

National Environmental Policy Act, 42 U.S.C. § 4321 *et seq.*...................5

Ocean Shipping Reform Act of 2022, Public Law 117–146,
    136 Stat. 1272 (June 16, 2022) .................................................2, 9

    Sec. 7(a) ...............................................................................5

    Sec. 7(b) ...............................................................................5

    Sec. 7(b)(1)...........................................................................10

    Sec. 7(b)(2)................................................ 2, 11–13, 24, 26–28, 40

Shipping Act of 1984, 46 U.S.C. §§ 40101–41310 .............................5–7

46 C.F.R. § 504.6(a)....................................................................43

46 C.F.R. § 541.4 .......................................................................14

46 C.F.R. § 541.4(a)(1) ...............................................................14

46 C.F.R. § 545.4 .......................................................................15

46 C.F.R. § 545.5 .................................................8, 11, 15, 26, 33, 36

46 C.F.R. § 545.5(c) ...........................................................................3

46 C.F.R. § 545.5(c)(1) .....................................................................26

46 C.F.R. § 545.5(d)-(f) ....................................................................28

46 C.F.R. § 545.5(f) ...........................................................................28

**Miscellaneous**

85 Fed. Reg. 29638 (May 18, 2020) ...............................................8, 26

87 Fed. Reg. 8506 (Feb. 15, 2022) .....................................................8

87 Fed. Reg. 62341 (Oct. 14, 2022)......................... 12–13, 29–32, 36–38

89 Fed. Reg. 14330 (Feb. 26, 2024) ...................... 1, 5, 7–10, 13–16, 29–32, 35–40

89 Fed. Reg. 39569 (May 9, 2024) ............................................16–17, 48

89 Fed. Reg. 59648 (July 23, 2024) ..................................................18

89 Fed. Reg. 77787 (Sept. 24, 2024) ........................................17–18, 37

168 Cong. Rec. H5464–67 (daily ed. June 13, 2022)............................10

168 Cong. Rec. S1843 (daily ed. Mar. 30, 2022) ..................................9

D.C. Cir. Rule 28(a)(7) ......................................................................2

FMC, Fact Finding Investigation No. 28 ........................................ 12-13

FMC, Fact Finding Investigation No. 29 .............................................7

FMC, Fact Finding Investigation No. 29, Interim
  Recommendations (July 28, 2021) .................................................8

FMC, Policy Statement on Retaliation (Dec. 28, 2021),
        Docket No. 21-15 ............................................................................47

S. Hearing 117–437 (Mar. 3, 2022) ...........................................9–10, 11

U.S. Const. art. III ...........................................................................1, 20

# GLOSSARY

| | |
|---|---|
| APA | Administrative Procedure Act |
| FMC | Federal Maritime Commission |
| Council | World Shipping Council |
| Final Rule | Demurrage and Detention Billing Requirements, 89 Fed. Reg. 14330 (Feb. 26, 2024) |
| JA | Joint Appendix |
| NEPA | National Environmental Policy Act |
| OSRA 2022 | Ocean Shipping Reform Act of 2022 |

**INTRODUCTION**

The World Shipping Council's (Council) petition for review of a Federal Maritime Commission (Commission or FMC) regulation about who may be billed for late fees — a rule issued at Congressional direction — should be denied. *See* Demurrage and Detention Billing Requirements, 89 Fed. Reg. 14330 (Feb. 26, 2024) (Final Rule). The Council is a trade association for the world's largest ocean common carriers. It challenges the part of the Final Rule which provides that the carriers may invoice fees for the late return of their equipment only to cargo shippers and consignees, rather than motor carriers (truckers) or others. But the Council has failed to provide the member affidavits or other evidence typically required in this circuit to show representational standing. In any event, the FMC had ample authority to issue the regulation and it was a reasonable act of policymaking under the deferential standard of review. The rule promotes reasonable conduct in the global supply chain, in response to Congressional concern about abusive billing practices by ocean carriers, by ensuring that late fees under contracts for ocean carriage are billed only to parties to those contracts.

As a threshold matter, the Council has failed to provide the kind of evidence this court requires to show standing. Article III requires that a party show injury that is specific, concrete, and actual or imminent, and petitioners challenging agency action directly in the court of appeals must make that showing no later than

1

in their opening brief. *See Twin Rivers Paper Co. LLC v. SEC*, 934 F.3d 607, 612–14 (D.C. Cir. 2019); Circuit Rule 28(a)(7). In particular, an association like the Council that is suing on behalf of its members must provide evidence showing that identified members have the required injury, and if that is not evident from the administrative record, they must do so by affidavit. But the Council has submitted no affidavit from any identified member. Instead, it provides only a declaration from the Council's own chief executive that includes a hyperlink to a list of members at the Council website and speculates that members will be harmed. The declaration lacks data or even anecdotal evidence, even though the rule had been in effect for more than four months.

In any case, the regulation that the Council challenges was well within the authority Congress granted to the Commission and thus consistent with the Administrative Procedure Act (APA), 5 U.S.C. § 706(2)(C). In the Ocean Shipping Reform Act of 2022 (OSRA 2022), Congress required that the Commission conduct a rulemaking to refine its existing approach to demurrage and detention in which, among other things, the agency had to make "a *determination of which parties may be appropriately billed* for any demurrage, detention, or other similar per container charges." Public Law 117–146 at Sec. 7(b)(2), 136 Stat. at 1275–1276 (June 16, 2022) (emphasis added). The Commission followed that direction, using the authority Congress delegated, in the type of administrative policymaking

action that the Supreme Court has recently re-affirmed is permissible. *See Loper Bright Enters. v. Raimondo*, ___ U.S. ___, 144 S. Ct. 2244, 2262–63, 2273 (2024). The Council claims that the FMC's regulation limiting such billing to specific types of entities exceeds the agency's authority under OSRA 2022 and 46 U.S.C. § 41102(c) (barring practices that are not "just and reasonable"), arguing that the rule violates the general "incentive principle" favoring freight fluidity that is considered in evaluating such practices, *see* 46 U.S.C. § 41104(a)(15)(B); 46 C.F.R. § 545.5(c). But even aside from Congress's pointed "which parties" command to the agency, the statutory provisions on which the FMC relied grant the agency authority to issue demurrage and detention rules under a broad "reasonable" conduct standard. The billed-parties rule draws a bright line, but it fits well within the existing regulatory framework, which itself includes general principles and bright lines.

The Commission's rule also easily survives the deferential standard of review for "arbitrary and capricious" challenges to agency policymaking under the APA, *see* 5 U.S.C. § 706(2)(A); *Loper Bright*, 144 S. Ct. at 2261. The Commission carefully evaluated hundreds of comments from the shipping industry about demurrage and detention billing. The agency then explained in detail why it had decided to limit billing to shippers or consignees who were parties to contracts for ocean carriage — a decision supported by most commenters — and it responded to

3

comments from the Council and others. In sum, the Commission examined the relevant information and made a reasoned decision. *See Sinclair Wyoming Refining Co. LLC v. EPA*, 114 F.4th 693, 711 (D.C. Cir. 2024).

The Council fails to show that the rule is arbitrary and capricious. The Council relies heavily on its own hypothetical, in which a trucker is responsible for a delay in returning equipment and yet cannot be directly billed for a late fee, supposedly impairing freight fluidity. But the Council fails to support this scenario with any real evidence from the record, fails to reckon with the real alternatives available to a common carrier in such a hypothetical situation, and again fails to recognize that the FMC must not only look to the incentive principle, but must also determine more broadly what conduct is "reasonable" in this context. *See Evergreen Shipping Agency (Am.) Corp. v. FMC*, 106 F.4th 1113, 1117 (D.C. Cir. 2024). The Council also makes much of an ambiguity regarding the billed-parties rule in one garbled paragraph of the Final Rule's preamble, which the agency promptly corrected before the Rule become effective. However, the Council's claims that this ambiguity and some informal email discussion about it show arbitrariness or genuine confusion are at odds with the record — the intention to bar the billing of truckers is crystal clear in the actual regulatory text, in the rest of the preamble, and in the Council's own opposition to the proposed regulation during the rulemaking. In addition, the Commission fully explained the reasons for

its new rule, clearly understood that the rule was a refinement of its approach to demurrage and detention, and responded to significant concerns from commenters.

Finally, the Council's challenge under the National Environmental Policy Act, 42 U.S.C. § 4321 *et seq.* (NEPA), should be rejected. The NEPA claim suffers from the representational standing problems noted above. In addition, the Council fails to allege a basis on which this Court could provide redress, since NEPA itself has no judicial review provision. And the Council fails to allege an injury that falls within the zone of interests for a NEPA claim. In any case, if the claim were to be evaluated under the APA's "arbitrary and capricious" standard, the Commission's actions here were permissible, since its environmental analysis of the billed-parties rule was reasonable.

## COUNTERSTATEMENT OF JURISDICTION

The Commission issues regulations to implement the Shipping Act, 46 U.S.C. §§ 40101–41310, pursuant to 46 U.S.C. § 46105(a). In this proceeding, the Commission had jurisdiction to issue the Final Rule, Demurrage and Detention Billing Requirements, 89 Fed. Reg. 14330 (Feb. 26, 2024), under 46 U.S.C. §§ 41102(c) and 46105(a), as well as OSRA 2022, Public Law 117-146 at Section 7(a) and 7(b), 136 Stat. 1272, 1272–76. To the extent that petitioner has standing, this Court has jurisdiction over the petition for judicial review filed on April 18, 2024, under 28 U.S.C. § 2342(3)(B).

5

## COUNTERSTATEMENT OF THE ISSUES

The issues presented for review are: (1) whether the Council has provided evidence sufficient to establish representational standing; (2) whether the Commission's rule regarding who may be sent invoices for demurrage and detention charges by ocean common carriers, issued at Congress's direction in OSRA 2022, was within the agency's statutory authority; (3) whether the rule was "arbitrary and capricious" under the deferential standard of review applicable to such APA challenges; and (4) whether the Council has standing for its NEPA claim and, if so, whether the Commission's environmental analysis was permissible under the APA's "arbitrary and capricious" standard.

## STATUTES AND RULES

The applicable statutes and regulations are contained in the Addendum to the Opening Brief for Petitioner (Oct. 16, 2024) (Doc. No. 2080269) (Br.).

## COUNTERSTATEMENT OF THE CASE

## I.    The Applicable Legal Framework

The FMC is an independent agency of the United States government with jurisdiction over the administration, interpretation, and enforcement of the Shipping Act of 1984. *See generally* 46 U.S.C. §§ 40101–41310. In particular, the Shipping Act requires ocean common carriers to use "just and reasonable" practices in the receiving, handling, storing, and delivering of shippers' property,

6

46 U.S.C. § 41102(c), and such carriers are also subject to more specific prohibitions in connection with their services, 46 U.S.C. § 41104(a). The Commission promulgates regulations to implement provisions of the Shipping Act, *see* 46 U.S.C. § 46105(a), and it adjudicates administrative complaints alleging violations of the Act, *see* 46 U.S.C. §§ 41301–41310.

## II.    Proceedings Before the Commission

### A.    Commission Proceedings Prior to OSRA 2022

The regulation at issue in this case has its roots in the FMC's Fact Finding Investigation No. 29, which began in March 2020, and whose basic purpose was to address constraints in ocean shipping as cargo volumes greatly increased during the Covid-19 pandemic, including the marked increase in demurrage and detention charges. *See* FMC, Fact Finding 29, available at https://www.fmc.gov/fact-finding-29/; Demurrage and Detention Billing Requirements, 89 Fed. Reg. 14330 (Feb. 26, 2024) (Final Rule) (JA __). For example, as the Commission noted in discussing Fact Finding 29 in the preamble to the Final Rule, "over a two-year period between 2020 and 2022, nine of the largest carriers serving the U.S. liner trades individually charged a total of approximately $8.9 billion in demurrage and detention charges and collected roughly $6.9 billion." 89 Fed. Reg. 14330. Among the recommendations by the Fact Finding Officer, FMC Commissioner Rebecca F. Dye, was a proposal to issue an Advance Notice of Proposed Rulemaking

(ANPRM) to consider whether the agency should impose new requirements as to

demurrage and detention billing. *See* Fact Finding No. 29 Interim

Recommendations (July 28, 2021) at 6–7, available at

https://www2.fmc.gov/ReadingRoom/docs/FFno29/FF29%20Interim%20Recomm

endations.pdf/.

As a result of this Investigation, in February 2022 the FMC issued an

ANPRM seeking industry views on billing requirements for such charges. *See*

Demurrage and Detention Billing Requirements, 87 Fed. Reg. 8506, 8509 (Feb. 15,

2022) (JA ___); *see* 89 Fed. Reg. 14330. In the ANPRM, the Commission sought

comments on whether it should establish specific new requirements as to the

content and other aspects of demurrage and detention billing. 87 Fed. Reg. at

8509–8510. The ANPRM noted that in making her recommendation to issue the

ANPRM, Commissioner Dye had proposed that the agency consider such specific

rules even though the agency had declined to prescribe them in its then-recent

Interpretive Rule on Demurrage and Detention, 85 Fed. Reg. 29638 (May 18,

2020) (currently at 46 C.F.R. § 545.5). *See* 87 Fed. Reg. at 8507. The Commission

noted in the ANPRM that since issuing its Interpretive Rule, it had continued to

receive complaints about billing practices. *Id*. Among the questions the

Commission posed in the ANPRM were inquiries about the identity of invoiced

parties and why they were properly billed. *Id*. at 8509.

The Commission received more than 80 comments on the ANPRM during the ensuing months. *See* FMC's Certified Index to the Record as to Final Rule (June 3, 2024) (Doc. No. 2057667) (Certified Index) at 1–8. The Council, a trade association representing about 20 large multinational ocean carriers that together "operate approximately 90 percent of the world's liner vessel services," was among the commenters. Br. at 24–25; *see* Certified Index at 7; World Shipping Council, https://www.worldshipping.org/who-we-are-1 (visited Nov. 25, 2024).

### B.     Congress Enacts OSRA 2022

In June 2022, Congress enacted the Ocean Shipping Reform Act of 2022, in response to the severe supply chain constraints experienced during the pandemic. Pub. L. 117-146, 136 Stat. 1272 (June 16, 2022) (OSRA 2022). *See* 89 Fed. Reg. at 14330–31. The legislative history includes expressions of deep concern about unfair practices and apparent abuses by ocean common carriers, including with regard to demurrage and detention billing, that became apparent at this time. *See* 168 Cong. Rec. S1843 (daily ed. March 30, 2022) (statement of Sen. Thune) (OSRA 2022 would give the FMC "increased authority to respond to unfair ocean carrier practices… [and] would also provide the FMC with tools to more quickly resolve detention and demurrage disputes, which would bring greater efficiency and transparency to a process that leaves many shippers frustrated…"); S. Hearing 117–437, Ocean Shipping Reform Act, Committee on Commerce, Science, and

9

Transportation, at 6–7 (March 3, 2022) (statement of Sen. Thune) (expressing appreciation for the FMC's "ongoing initiatives to alleviate supply chain problems" and noting that "[b]oth [FMC] Chairman [Daniel] Maffei and Commissioner Dye have spearheaded efforts to convene stakeholders, launch investigations such as Fact Finding Number 29, and even issue an Advance Notice of Proposed Rulemaking on detention [and] demurrage billing practices."); 168 Cong. Rec. H5464–67 (daily ed. June 13, 2022); *id*. at H5465 (statement of Rep. Garamendi) (OSRA 2022 "will make a very real difference for American businesses and consumers by lowering the exorbitant ocean shipping costs and prohibiting unfair business practices by foreign-flagged ocean carriers."); *id*. at H5467 (statement of Rep. Carbajal) ("the bill contains a number of provisions aimed at addressing wrongfully issued detention and demurrage charges…").

As enacted, OSRA 2022 did include specific requirements for demurrage and detention billing by ocean common carriers, *see* 46 U.S.C. § 41104(d), (f), and it directed the FMC to open a rulemaking to further define prohibited practices as to such charges under 46 U.S.C. § 41102(c), the pre-existing provision that requires common carriers to observe "just and reasonable" practices related to the handling of shippers' property. *See* Public Law 117–146 at Sec. 7(b)(1), 136 Stat. at 1275; 89 Fed. Reg. at 14331. OSRA 2022 stated that the agency's rulemaking should "only seek to further clarify reasonable rules and practices related to the

assessment of detention or demurrage charges" to address issues identified in the earlier FMC rulemaking that led to the "Interpretive Rule on Demurrage and Detention Under the Shipping Act." Public Law 117–146 at Sec. 7(b)(2). That rule, now at 46 C.F.R. § 545.5, contains principles and standards to aid in determining when demurrage and detention charges violate section 41102(c).

However, in that same subsection of OSRA 2022, Congress also mandated that the Commission's new rulemaking include "a *determination of which parties may be appropriately billed* for any demurrage, detention, or other similar per container charges." Public Law 117–146 at Sec. 7(b)(2). (emphasis added). *See* S. Hearing 117-437, Ocean Shipping Reform Act, Committee on Commerce, Science, and Transportation, at 19 (March 3, 2022) (statement of Sen. Klobuchar) ("I heard from one trucking company that was billed $100,000 in late fees by an ocean carrier because it took months for them to make an appointment to return their empty container simply because of the overcapacity at the terminal. So it wasn't really their fault."); *id*. at 20 (response of FMC Chairman Maffei) ("I am frankly not even sure if that trucking company should have been billed at all.").

## C.    The Commission's Implementation of OSRA 2022

Following the passage of OSRA 2022, the Commission issued a Notice of Proposed Rulemaking to implement provisions related to demurrage and detention charges, including Congress's direction in Section 7(b)(2) that its rulemaking

include "a determination of which parties may be appropriately billed." *See*

Demurrage and Detention Billing Requirements, 87 Fed. Reg. 62341 (Oct. 14,

2022) (NPRM) (JA__). In explaining the relevant background, the NPRM

summarized comments received in response to the ANPRM. 87 Fed. Reg. at

62342–45. The NPRM noted that truckers had reported that billing parties

(including ocean carriers) often invoiced them even though they were not parties to

the contracts between the billing parties and the shippers, and that billing parties

sometimes prevented them from picking up or dropping off containers due to

disputes the billers had with other customers of the truckers, so the truckers were

forced to cover disputed charges themselves. *Id*. at 62345. The truckers urged the

FMC to adopt a rule that would require billing parties to bill their shipping

customers only. *Id*. The Commission proposed a rule that would define properly

issued invoices as those issued to parties that had contracted with the billing party

for the ocean carriage or storage of cargo, which would usually be the shipper. *Id*.

at 62348–50. The Commission explained that entities outside those contractual

relations, including truckers, would be at a disadvantage in managing disputes

related to demurrage and detention charges, noting that often the ocean carriage

contracts determined the time within which equipment had to be returned. *Id*. The

Commission also noted that information collected in its prior Fact Finding

Investigation No. 28 — on which the Council relies in this case (Br. at 9, 11) —

12

indicated that in other maritime nations, common carriers collect demurrage and detention charges "directly from shippers rather than motor carriers." *Id*. at 62349. The Commission also sought comment as to whether it should also permit billing of consignees named on the bill of lading. *Id*. at 62349–50.

In response to the NPRM, the FMC received 191 comments from a variety of industry participants, including the Council. *See* 89 Fed. Reg. at 14330–31; Certified Index at 9-20. The Final Rule, published on February 26, 2024, provided guidance for demurrage and detention billing by ocean carriers and marine terminal operators, particularly specific requirements as to the contents of such invoices and related standards, and the Rule generally went into effect on May 28, 2024. *See* 89 Fed. Reg. 14330.

In the Final Rule, the Commission complied with the Congressional direction in Section 7(b)(2) to make "a determination of which parties may be appropriately billed for any demurrage, detention, or other similar per container charges" by essentially limiting parties that may be billed to the party (typically the shipper) that has a contract with the common carrier for the ocean transport or storage of the cargo, or the consignee of the cargo, thus barring the billing of truckers. *See* 89 Fed. Reg. at 14331, 14338–40, 14362. This requirement is now

reflected in 46 C.F.R. § 541.4 (Properly issued invoices). *See* 89 Fed. Reg. at 14362.[1]

The Commission explained in some detail the reasoning for limiting those who may be billed for demurrage and detention charges to shippers and consignees, an approach that the agency noted was supported by most commenters, especially shippers and truckers. 89 Fed. Reg. at 14338–41. The Commission emphasized again that those who were not parties to contracts for ocean carriage would not have knowledge of the contracts and so would find it harder to dispute demurrage and detention charges, noting comments that limiting such billing to those who were parties to the contracts could improve the efficient resolution of disputes. *Id*. at 14338. In addition, truckers had again explained that they often found themselves locked out of marine terminals for failure to pay detention charges while awaiting payment from their customers, without negotiating power, and that in many cases they were not at fault for such charges. *Id*.

The Commission also addressed the concerns of those who did not support the rule, including ocean carriers. 89 Fed. Reg. at 14339–41. The Commission noted that after careful analysis, it had determined that limiting billing to those

---

[1]    Section 541.4(a)(1) specifically defines this type of properly billed party as the "person for whose account the billing party provided ocean transportation or storage of cargo and who contracted with the billing party for the ocean transportation or storage of cargo." Such a party is typically the shipper, and for ease of use this brief will generally refer to this type of party as the shipper.

who had a contract for ocean carriage would be best for the supply chain because of the superior knowledge of the contract those parties had. The agency recognized that in some cases these billed parties may not be primarily responsible for delays, noting that "[a]lthough other parties may in some circumstances have more influence on whether demurrage or detention actually accrues, they are not the best part[ies] to understand the terms of the contract and dispute any charges." *Id*. at 14339. The Commission also acknowledged that "some regulated parties will need to change their business practices in order to comply with this rule," but on balance it determined that its chosen approach would "best benefit the supply chain." *Id*. Finally, the FMC noted that many commenters had pointed out that consignees often have the best knowledge and are in the best position to mitigate or dispute charges. *Id*. at 14340. The agency therefore determined "to allow consignees to be billed as an alternative to the shipper when the consignee is the party contracting for the shipping and is therefore in contractual privity with the carrier." *Id*.

The preamble also specifically addressed an argument by the Council that the proposed rule's definition of who may be billed violated the APA because it unreasonably departed from the agency's prior "case-by-case" approach to demurrage and detention "billing practices," as reflected in previously issued Interpretive Rules at 46 C.F.R. §§ 545.4, 545.5, by establishing a bright-line rule on this issue, and that this would inhibit the flow of freight. *See* 89 Fed. Reg. at

15

14355. In response, the Commission explained that it had previously addressed this concern, a reference to its addressing of similar carrier concerns earlier in the preamble. The Commission also noted, in effect, that a concern that the new rule supersedes to some extent a prior rule does not in itself raise an APA issue. *Id*. The Commission emphasized that Congress in OSRA 2022 had "specifically required the Commission to issue rules under 46 U.S.C. § 41102(c) that further define the prohibited practices by common carriers, marine terminal operators, and shippers, regarding the assessment of detention or demurrage charges." *Id*.

One commenter in the rulemaking did request that the proposed definition as to who may be billed for demurrage and detention be expanded to include truckers in situations where they have a separate contract with the billing common carrier, but the Commission expressly declined to make that change. 89 Fed. Reg. at 14336. However, shortly after the Final Rule was issued, the agency received several email inquiries concerning an apparent ambiguity with regard to the one paragraph of the preamble that addressed that requested change. *See* Demurrage and Detention Billing Requirements; Correction, 89 Fed. Reg. 39569 (May 9, 2024) (Correction) (JA __). Specifically, several persons noted some arguable tension between this paragraph and the text of the rule itself, which clearly barred ocean carriers from billing truckers for demurrage and detention charges. *Id*. at 39569–70. The Commission re-evaluated the paragraph in question, concluding

that it did inadvertently create ambiguity; indeed, the last two sentences of the

paragraph did not appear to be complete sentences. *See id*. On May 9, 2024, the

FMC issued the Correction, which deleted the preamble language that presented

this issue, re-affirmed the Final Rule's statement that truckers cannot be billed for

such charges, and expressed appreciation that the inquiries had "helped this

clarification to issue well before" the rule's effective date of May 28, 2024. *Id*.

On May 28, 2024, the same day the Final Rule went into effect, the Ocean

Carrier Equipment Management Association (OCEMA) filed a petition with the

Commission seeking an extension of the Rule's effective date by at least 90 days.[2]

OCEMA claimed that ocean carriers needed more time to adapt to what it

characterized as the "apparent reversal" of the Rule's position on the billing of

motor carriers in the Correction. 89 Fed. Reg. at 77788. The Commission received

17 comments, 16 of which urged denial of OCEMA's petition. *Id*. Some

commenters noted that "an extension is not necessary because carriers are already

complying with the rule." *Id*. The Commission denied the petition, noting that

further delay would impede timely implementation of the Rule, while leading to

---

[2]    *See* Ocean Carrier Equipment Management Association; Denial of Petition for Delay of Effective Date of the Demurrage and Detention Billing Requirements Final Rule, 89 Fed. Reg. 77787 (Sept. 24, 2024). OCEMA is an association of major ocean common carriers. It has about 10 members, all of whom appear to be members of the Council as well. *See* OCEMA, About OCEMA, available at http://www.ocema.org/about.html; OCEMA Members, available at http://www.ocema.org/members.html (visited Nov. 26, 2024).

potential disruption and confusion. *Id*. at 77788–89. The Commission also noted that the text of the Rule itself remained clear, and that potential ambiguity in a preamble could not be used to attempt to contradict or introduce ambiguity into a clear rule. *Id*. at 77789.

## III.   Proceedings Before This Court

The Council filed its petition to this Court on April 18, 2024. *See* Petition (Apr. 18, 2024) (Doc. No. 2050430). The petition seeks to have the Commission's Final Rule set aside on the broad grounds that it is contrary to statute as well as arbitrary, capricious, an abuse of discretion, and otherwise contrary to law. *Id*. at 1–2.[3] In early June 2024 the Commission filed the Certified Index, which included 289 documents. *See* Certified Index.

On June 21, 2024, the Council filed a motion seeking to compel the inclusion of the email inquiries discussed above in the Commission's administrative record. Motion to Complete the Administrative Record (June 21, 2024) (Doc. No. 2061121) (Motion); Br. Exh. A. The Commission opposed this motion. *See* FMC's Response to Motion to Complete Administrative Record (July

---

[3]    The Council also recently filed an appeal challenging the FMC's Final Rule as to unreasonable refusals to deal or negotiate for cargo space, citing essentially the same grounds. *See World Shipping Council v. FMC*, No. 24-1298, Petition (D.C. Cir. Sept. 13, 2024) (Doc. No. 2074759); Definition of Unreasonable Refusal to Deal or Negotiate with Respect to Vessel Space Accommodations Provided by an Ocean Common Carrier, 89 Fed. Reg. 59648 (July 23, 2024).

1, 2024) (Doc. No. 2062551). The Court deferred consideration of the motion to the merits stage. Order (Sept. 4, 2024) (Doc. No. 2073037).

## SUMMARY OF ARGUMENT

The Council's petition should be denied. As a threshold matter, the Council has failed to provide the evidence of harm usually required in this circuit to show representational standing.

In any event, the Commission's billed-parties regulation is consistent with the APA and so the petition's APA challenges should be rejected. First, the regulation was well within the agency's statutory authority, as it was issued pursuant to explicit Congressional direction and easily meets the standard of reasonableness set by relevant statutes. Moreover, the regulation was permissible under the deferential standard of review applicable to claims of "arbitrary and capricious" agency action. The Commission carefully evaluated comments received in its rulemaking and clearly explained the reasonable approach it chose.

The Council's NEPA claim also lacks merit. There is no jurisdiction because the Council has failed to show standing. In any event, the Commission's environmental analysis was reasonable and thus permissible under the "arbitrary and capricious" standard of review.

Finally, the Council's motion to add certain informal email inquiries to the administrative record should be denied. The Council has failed to show any harm,

yet placing such emails in the record could impair open agency communications.

And in any event, the emails were not placed before the agency decision-makers.

## ARGUMENT

## I.    The Council Has Failed to Provide Evidence Sufficient to Support Its Claim of Representational Standing

### A.    Standing Requirements

An association suing on behalf of its members, as the Council is here, must make a specific showing to establish representational standing under Article III. Such an organization has standing if it demonstrates that "(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Flyers Rights Educ. Fund, Inc. v. U.S. Dep't of Transp.*, 957 F.3d 1359, 1361 (D.C. Cir. 2020) (cleaned up). In particular, a showing of injury "requires proof that at least one member has suffered an injury in fact — 'an invasion of a legally protected interest which is (a) concrete and particularized; and (b) actual or imminent, not conjectural or hypothetical.'" *Twin Rivers Paper Co. LLC v. SEC*, 934 F.3d 607, 612 (D.C. Cir. 2019) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992) (cleaned up)). So an association must point to evidence showing that identified members have suffered or will suffer a concrete injury because of the challenged rule. *Id*. at 613. Unless such harm is evident in the

administrative record, the association must provide "'individual affidavits' from 'members who have suffered the required harm.'" *Id*. at 613–14 (quoting *Summers v. Earth Island Inst.*, 555 U.S. 488, 499 (2009)). Statements of counsel are insufficient. *Sierra Club v. EPA*, 292 F.3d 895, 901 (D.C. Cir. 2002).

### B.    As an Association, the Council Must Provide Sufficient Evidence of Its Members' Standing, But It Has Failed to Do So

The Council, as an association, must demonstrate representational standing by providing affidavits from identified members showing how they face specific, tangible harm from the Rule. *See Twin Rivers*, 934 F.3d at 613. The Council should be able to supply such evidence. As noted above, its members are a group of large companies that together operate the vast majority of global liner shipping.

The Council has not met the above requirement. It provides no affidavits from any carrier member, and indeed, it does not even specifically identify any member that is harmed by the rule it challenges. It merely offers a short section in its brief, including a hyperlink to a page on its website that lists current members, citing an attached declaration from its *own* chief executive, and referencing its participation in the rulemaking, claiming that its "standing is apparent from the administrative record." Br. at 26; *see id*. at 24–26.

The Council's declaration from its President and CEO Joe Kramek does not constitute evidence about any identified Council member. *See* Br. Exh. B. Mr. Kramek does not state that he has ever been employed by one of the Council's

members or by any ocean common carrier. He does assert that the Council's members are affected by the Final Rule; that demurrage and detention charges are valuable ways to incentivize the movement of cargo; that being unable to bill truckers for such charges "will have a significant economic impact" on the Council's members; and that it will cause "delays" in the movement of cargo and containers, "likely" causing port congestion. *Id*. at 2–4. What the declaration does not provide along with these vague predictions is evidence — no data, anecdotal accounts, real-world examples, or even a specific explanation of why being unable to bill truckers for late fees, as opposed to shippers and consignees, will cause concrete harm to specific Council members — even though the rule had been in effect for more than four months at the time the declaration was signed. The declaration thus presents the same kind of "abstract [and] conclusory assertions of injury" that *Twin Rivers* confirmed do not suffice to show standing. 934 F.3d at 612-13. *Cf. Chamber of Commerce v. EPA*, 642 F.3d 192, 202-03 (D.C. Cir. 2011) (assertions that harm "may" or "could" occur are insufficient to show "actual," "imminent," or "certainly impending" injury).

## II. The Final Rule Permissibly Defines Which Parties May Be Billed for Demurrage and Detention Charges

The Council seeks review under two APA provisions. *See* Br. at 27-49. In particular, the Council relies on 5 U.S.C. § 706(2)(C), which bars agency action that is "in excess of statutory jurisdiction, authority, or limitations, or short of

statutory right," and 5 U.S.C. § 706(2)(A), which prohibits action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *Id*.

### A.    The Commission Had Ample Authority to Issue the Regulation under OSRA 2022 and 46 U.S.C. § 41102(c)

In reviewing a claim that an agency has acted in excess of statutory authority under 5 U.S.C. § 706(2)(C), the Supreme Court recently made clear that "[c]ourts must exercise their independent judgment," but "[c]areful attention to the judgment of the Executive Branch may help inform that inquiry." *Loper Bright Enters. v. Raimondo*, ___ U.S. ___, 144 S. Ct. 2244, 2273 (2024). Indeed, *Loper Bright* noted that "courts may — as they have from the start — seek aid from the interpretations of those responsible for implementing particular statutes," which "'constitute a body of experience and informed judgment to which courts and litigants may properly resort for guidance' consistent with the APA." *Id*. at 2262 (quoting *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944)). In *Skidmore*, the Court had explained that the "weight of such [agency] judgment in a particular case [would] depend upon the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade, if lacking power to control." *Id*. at 2259 (quoting *Skidmore*, 323 U.S. at 140). "And interpretations issued contemporaneously with the statute at issue, and which have remained consistent over time, may be especially useful in determining the statute's meaning." *Id*. at

23

2262. "[O]f course, the statute's meaning may well be that the agency is authorized to exercise a degree of discretion." *Id*. at 2263. Such statutes may delegate authority to define a particular statutory term, or empower an agency to "fill up the details of a statutory scheme, or to regulate subject to the limits imposed by a term or phrase that leaves agencies with flexibility, such as 'appropriate' or 'reasonable.'" *Id*. (cleaned up); *see id*. at 2273 (courts must, within constitutional limits, respect statutory delegations of authority to agencies).

The Commission's billed-parties rule was well within the authority Congress delegated to the agency in OSRA 2022 and in 46 U.S.C. § 41102(c). Specifically, Congress mandated in OSRA 2022 that the Commission make "a *determination of which parties may be appropriately billed* for any demurrage, detention, or other similar per container charges," as part of a new rulemaking to "only seek to clarify reasonable rules and practices related to the assessment of detention or demurrage charges." Public Law 117–146 at Sec. 7(b)(2) (emphasis added). And the pre-existing provision at 46 U.S.C. § 41102(c) requires carriers to observe "just and reasonable" practices in handling cargo. Taken together, these statutory provisions give the Commission a specific command — to determine "which parties may be appropriately billed" — within the larger context of broad statutory authority to determine which practices are "reasonable."

24

The Commission carefully followed these standards in fashioning its regulation determining that shippers and consignees were properly billed parties, consistent with the principles approved in *Loper Bright*. Although courts exercise independent judgment in interpreting statutes, they may "seek aid from the interpretations of those responsible for implementing particular statutes," which "'constitute a body of experience and informed judgment to which courts and litigants may properly resort for guidance' consistent with the APA." *Loper Bright*, 144 S. Ct. at 2262 (quoting *Skidmore*, 323 U.S. at 140). The Commission has been regulating demurrage and detention billing for decades under the Shipping Act, and it has engaged in extensive investigation and rulemaking activity on relevant issues over the last five years, including in Fact Finding 29, so it is well placed to provide such guidance. In addition, its interpretation of section 7(b)(2) was, by the directive of OSRA 2022 itself, issued almost "contemporaneously with the statute at issue," in a period in which the agency was well aware of the Congressional concerns reflected in the legislative history. *Id*. at 2262. The Commission's action here closely tracks the Supreme Court's description of a permissible exercise of delegated authority, as the agency acted to "fill up the details of [the] statutory scheme, [and] to regulate subject to the limits imposed by a term or phrase that leaves agencies with flexibility, such as 'appropriate' or 'reasonable.'" *Id*. at 2263 (cleaned up). This is exactly what the Commission did in "clarify[ing] *reasonable*

25

rules and practices" related to demurrage and detention, in a rulemaking to include "a determination of which parties may be *appropriately* billed" for such charges under 46 U.S.C. § 41102(c), which itself requires that property handling practices be "just and *reasonable*." Public Law 117–146 at Sec. 7(b)(2) (emphases added).

### 1. The Council Fails to Show the Commission Lacks Authority under OSRA 2022

The Council argues that the Commission's billed-parties rule exceeds its authority under OSRA 2022 (Br. at 27–34), but that claim misses the mark. The Council's basic argument is that Congress limited the scope of what the agency could do in its rulemaking by stating that it could "only seek to clarify reasonable rules and practices" to address issues identified in the 2020 FMC rulemaking, which as noted above had resulted in an Interpretive Rule with general principles to aid in determining when demurrage and detention charges were unlawful. *See* Public Law 117–146 at Sec. 7(b)(2); 46 C.F.R. § 545.5; Interpretive Rule on Demurrage and Detention Under the Shipping Act, 85 Fed. Reg. 29638, 29665 (May 18, 2020). The Council asserts that the FMC's new rule is inconsistent with that Interpretive Rule, both because it does not serve the "incentive principle" that the agency "will consider" in assessing the reasonableness of demurrage and detention charges — whether such charges "are serving their intended primary purposes as financial incentives to promote freight fluidity," 46 C.F.R. § 545.5(c)(1) — and because it establishes a bright line, which the Council claims

26

is contrary to the fact-specific "reasonableness" inquiry entailed in the Interpretive Rule as a whole.

These claims must fail because they rely on a distorted and seemingly contradictory view of the Commission's broad authority to provide guidance in this area. On the one hand, the Council at times (wrongly) seems to present the incentive principle as the exclusive test of whether demurrage and detention regulation is valid, precluding the agency from considering other factors. On the other hand, the Council insists such regulation must be a holistic, fact-specific "reasonableness" inquiry, so there cannot be bright lines like the billed-parties rule.

But the regulatory framework can and does contain a mix of general standards and more specific rules. Indeed, Congress's direction in section 7(b)(2) itself signaled this, by directing the FMC to "clarify reasonable rules and practices," but also to specifically include "a determination of which parties may be appropriately billed." In fact, the relevant statutory provisions *themselves* reflect a mix of general principles and bright lines. *Compare*, *e.g.*, 46 U.S.C. § 41102(c) (carriers must observe "just and reasonable" practices) *with* § 41104(d)(2) (demurrage and detention invoices must include 13 specific elements including deadlines, container numbers, and rates). It seems clear that Congress simply wanted the Commission to further refine the principles set out in the Interpretive

Rule, including on one particular topic that seems especially suited to a bright line: "which parties may be appropriately billed." Public Law 117–146 at Sec. 7(b)(2).

The Council stresses (Br. at 29) that Congress incorporated the "principles" of the Interpretive Rule, including the incentive principle, into the new 46 U.S.C. § 41104(a)(15), but again, Congress also described what it wanted as "reasonable" rules. Of course, the Interpretive Rule itself envisions a "reasonableness" analysis, in accord with the language of the statute it was issued to implement, 46 U.S.C. § 41102(c). But that analysis may occur based on factors that go *beyond* the incentive principle, *see* 46 C.F.R. § 545.5(d)–(f). Indeed, 46 C.F.R. § 545.5(f) (Non-Preclusion) pointedly states that the FMC may consider factors "in addition to those specifically listed in the rule." In any case, the efficiency benefits that the Commission envisioned in directing demurrage and detention billing to shippers and consignees *do* serve the incentive principle. In short, there is nothing to stop the agency from issuing a regulation that simply defines which types of parties may be billed, as part of a larger regulatory structure built on reasonableness.

In light of the history of abuses in demurrage and detention revealed in the FMC's investigatory and rulemaking efforts, *see* supra pp. 7–9, 11–18, and the clear impetus behind OSRA 2022 to manage those abuses, *see* supra pp. 9–11, the FMC's reading of the authorizing language to permit a specific determination of properly billed entities is plainly the better reading. In any event, the agency has

28

been delegated significant regulatory discretion, and its interpretation of its statutory authority is entitled to considerable weight, under the standards of *Loper Bright*, 144 S. Ct. at 2262–63, and *Skidmore*, 323 U.S. at 140.

### 2.  The Council Fails to Show the Commission Lacks Authority Under 46 U.S.C. § 41102(c)

The Council's arguments about the Commission's authority under 46 U.S.C. § 41102(c), which bars "unjust and unreasonable" practices, are also unavailing. *See* Br. at 34–38. The Council essentially claims that the FMC was required to have made a "finding" that billing truckers for demurrage and detention charges is "always" unreasonable, arguing that it *is* reasonable when a trucker has a separate contract with the ocean carrier. Br. at 34–36. But the Council provides no persuasive support for imposing such a burden on a regulatory agency like the FMC that is tasked with creating rules to guide late-fee billing under a broad "unjust and unreasonable" standard. Even if there was a "finding" requirement, the extensive explanations in the NPRM and the Final Rule, in the context of OSRA 2022 and its specific "which parties" directive, would provide ample support for the permissibility of the billed-parties rule. *See* 87 Fed. Reg. 62341, 62345, 62348–50; 89 Fed. Reg. 14330, 14338–41. Those explanations were both more comprehensive and more specific than the Council claims, encompassing efficient dispute resolution and promoting fairness in the ocean supply chain. *Id.*; *see* Br. at 36–37.

Moreover, the Council's suggestion that an agency must show that prohibited conduct is "always" unreasonable is inconsistent with the basic nature of bright-line rules, which cannot be set aside simply because a challenger points to a particular hypothetical application that it does not believe serves the rule's underlying interests. On the contrary, agencies "may employ bright-line rules for reasons of administrative convenience, so long as those rules fall within a zone of reasonableness and are reasonably explained." *Activis Elizabeth LLC v. FDA*, 625 F.3d 760, 766 (D.C. Cir. 2010) (cleaned up). The Commission explained in detail why, in light of the information it had evaluated, it is reasonable to focus demurrage and detention billing on the contract for ocean carriage. *See* 87 Fed. Reg. 62341, 62345, 62348–50; 89 Fed. Reg. at 14338–41. A 55-m.p.h. roadway speed limit is not unreasonable because some drivers may be able to drive safely at 56 m.p.h.

Finally, the Council relies on claims (Br. at 37) that until recently the "FMC agreed" that it was appropriate for carriers to bill truckers in the relevant context, but that is incorrect. The Council points only to the informal guidance emails from agency staff, which plainly do *not* represent the position of the Commission, as the FMC has repeatedly emphasized. *See* FMC's Response to Motion to Complete Administrative Record (Doc. No. 2062551); FMC, Request a Legal Opinion,

available at https://www.fmc.gov/complaints-and-assistance/ (even a *formal* legal

opinion from the General Counsel does not express the view of the Commission).

> **B.    The Billed-Parties Rule Easily Survives the Deferential Review Applicable to "Arbitrary and Capricious" Claims**

> ### 1.  The Regulation Was Reasonable and Reasonably Explained

The arbitrary and capricious standard of 5 U.S.C. § 706(2)(A) is "deferential

to the agency," and under it courts "must uphold decisions that are reasonable and

reasonably explained." *NextEra Energy Res., LLC v. FERC*, 118 F.4th 361, 368

(D.C. Cir. 2024) (cleaned up); *see Loper Bright*, 144 at 2261 (judicial review of

agency policymaking under 5 U.S.C. § 706(2)(A) is deferential). Reasoned

decision-making means that the agency must "examine the relevant data and

articulate a satisfactory explanation for its action." *Sinclair Wyoming Refining Co.*

*LLC v. EPA*, 114 F.4th 693, 711 (D.C. Cir. 2024) (quoting *FCC v. Fox Television*

*Stations, Inc.*, 556 U.S. 502, 513 (2009) (cleaned up)).

The billed-parties rule was reasonable and permissible under the deferential

standard of review applicable to challenges under 5 U.S.C. § 706(2)(A). *See Loper*

*Bright*, 144 S. Ct. at 2261; *NextEra Energy*, 118 F.4th at 368 (cleaned up). The

Commission reviewed hundreds of comments from diverse members of the

shipping community about demurrage and detention billing following the ANPRM

and NPRM. The agency explained in detail why it had decided to limit such billing

to shippers or consignees who were parties to contracts for ocean carriage. *See* 87

Fed. Reg. 62341, 62345, 62348–50; 89 Fed. Reg. 14330, 14338–41. It noted that

these parties would likely have greater knowledge of such contracts and a greater

ability to evaluate and potentially dispute demurrage and detention charges. *Id*.

And it pointed to a history of apparent abuses in billing practices by entities with

much great bargaining power, particularly affecting the truckers that the Council

still seeks to bill. *See* 87 Fed. Reg. at 62345 (truckers reported being invoiced even

though they were not parties to the contracts between shippers and billing parties,

who sometimes denied them access to containers due to disputes the billers had

with other customers of the truckers, so that the truckers had to cover disputed

charges themselves); 89 Fed. Reg. at 14338 (truckers explained being locked out of

marine terminals for failure to pay detention charges while awaiting payment from

their customers, without negotiating power, although in many cases they were not

at fault). Most rulemaking commenters favored the Commission's approach on the

billed-parties issue, and the agency addressed in detail the concerns of others that

the Rule was unlawful or unwise. 89 Fed. Reg. at 14338–39. The Commission

even responded to the Council's arguments that its rule violated the APA. 89 Fed.

Reg. at 14355. Thus, the Commission "examine[d] the relevant data and

articulate[d] a satisfactory explanation for its action." *Sinclair Wyoming Refining

Co.*, 114 F.4th at 711 (quoting *Fox Television*, 556 U.S. at 513 (cleaned up)).

## 2.  The Council Fails to Show the Rule Is Arbitrary and Capricious

The Council presents four different arguments that the billed-parties rule is "arbitrary and capricious." But none of those claims has merit.

*First*, the Council argues that the rule is *substantively* arbitrary and capricious, asserting that as a bright-line rule, it cannot co-exist with the incentive principle in the Interpretive Rule at 46 C.F.R. § 545.5. *See* Br. at 39–41. But the Commission has already shown that this is incorrect, in its discussion of statutory authority. *See supra* pp. 26–29. As the Commission explained, Congress itself created a mix of general standards and specific rules in the regulatory framework, placing the "just and reasonable" standard in 46 U.S.C. § 41102(c) alongside the very specific billing requirements of 46 U.S.C. § 41104(d). In addition, the Interpretive Rule does not confine the relevant analysis to the incentive principle, but specifically states that the Commission may consider other factors in its reasonableness analysis. And bright line rules are permissible as long as they operate within a zone of reasonableness and are reasonably explained. *Activis Elizabeth*, 625 F.3d at 766. The billed-parties rule fits comfortably in this regulatory framework. Indeed, the rule does serve the incentive principle to the extent it promotes the efficiency interests the FMC identified. And despite the Council's frequent claims that the billed-parties rule will impair freight fluidity, it points to no real-world evidence in the record that that is the case.

33

The Council does rely heavily (Br. at 40) on a hypothetical scenario in which a trucker is at fault for a late delivery of equipment, yet cannot be billed for demurrage and detention, and the Council cites a recent decision that found the FMC's application of the Interpretive Rule in a small-claims adjudication involving trucker billing to be arbitrary and capricious. *See Evergreen Shipping Agency (Am.) Corp. v. FMC*, 106 F.4th 1113 (D.C. Cir. 2024). However, that juxtaposition supports the Commission's position in this case. First of all, the panel in *Evergreen* faulted the agency for focusing *too closely* on the incentive principle, to the exclusion of other factors in the Interpretive Rule's reasonableness analysis, *id*. at 1117 — a flawed approach that it appears the Council is advocating in this case, in contrast to the broader approach that the Commission took in crafting the billed-parties rule.

In addition, the *Evergreen* case provides a real-world factual example of the problems with trucker billing, and the reasonableness of the FMC's new rule, that carries far more weight than the Council's go-to hypothetical of the at-fault trucker, which the Council never supports with any data or specific example. In *Evergreen*, the shipper Yamaha had contracted with the ocean carrier Evergreen to transport motorcycles from Japan to Yamaha's warehouse in Newnan, Georgia, via the Port of Savannah, with specific deadlines for the return of the container and truck chassis. 106 F.4th at 1115. A trucker that was not a party to the Yamaha-

34

Evergreen contract, TCW, would transport the cargo over land in Georgia. *Id*.

TCW picked up the cargo and delivered it to Yamaha's Georgia warehouse, but

due to a Covid-related closure at the warehouse, TCW returned the container and

chassis to the Port late under the terms of the Yamaha-Evergreen contract. *Id*. at

1116. Evergreen billed TCW for a detention charge, and TCW paid it. *Id*. TCW

then had to seek reimbursement from Yamaha, and Yamaha paid TCW in full for

the charge. *See TCW v. Evergreen*, FMC No. 1966(I), Order Affirming Initial

Decision, 2022 WL 18068977, at *2 (Dec. 29, 2022), *vacated and remanded*,

106 F.4th 1113. This factual scenario hardly reflects a more "reasonable" approach

than the Commission's new rule, under which Evergreen would have directly

billed Yamaha, the entity that made the contract for carriage establishing the

equipment delivery deadlines — and whose warehouse closure caused the delay.

However, even in the hypothetical situation the Council presents, with a

trucker at fault for delay, the Commission's billed-parties rule does not impair

freight fluidity or prevent ocean carriers from obtaining recourse. First, of course,

carriers can bill the shippers or consignees who are actually parties to their

contracts for ocean carriage and who know their terms. 89 Fed. Reg. 14330,

14338–39. In the event that a third party such as a trucker is at fault for a delay, the

billed parties have recourse against that third party for reimbursement, as they

generally do have commercial relationships and strong incentives to continue those

relationships. It is notable that despite the billed-parties rule's direction of bills to shippers, those same entities were supportive of the rule. *See id.* at 14338.

*Second*, the Council argues (Br. at 41–43) that the Commission failed to provide a *reasoned explanation* for the rule, but that is also incorrect. The Council primarily contends that the agency did not adequately explain why it was "departing" from the Interpretive Rule's incentive principle, suggesting that may have been because the FMC did not understand its own rule, relying on the one ambiguous (and promptly corrected) paragraph from the Final Rule's preamble and the later informal emails with FMC staff. But again, the reasonableness inquiry under 46 U.S.C. § 41102(c) and 46 C.F.R § 545.5 goes *beyond* the incentive principle. The agency explained at length why it was adopting the billed-parties rule, describing the rule's anticipated benefits in promoting fairness and efficiency in the supply chain, as well as addressing the history of abuses in the billing of truckers, and it addressed comments and objections in great detail. *See* 87 Fed. Reg. 62341, 62345, 62348–50; 89 Fed. Reg. 14330, 14338–41, 14355. The Final Rule did not recite that its billed-parties regulation would "serve the incentive principle," but it certainly addressed the Council's own explicit complaints that the rule was contrary to the incentive principle. 89 Fed. Reg. 14330, 14355. In short, the agency "articulate[d] a satisfactory explanation for its action" under the deferential standard of review. *Sinclair Wyoming*, 114 F.4th at 711 (cleaned up).

The Council's repeated claims that the Commission did not understand its own rule resemble a game of "gotcha." The Council has seized on one obviously garbled preamble paragraph, along with a few emails in which agency staff tried to provide guidance about it, and presented that as the agency's position on the rule, despite: (1) the clear text of the rule itself, which plainly states that those who may be billed are shippers and consignees; (2) the remainder of the preamble, which explained that only those two types of parties may be billed and that truckers may not, and rejected requests that the rule be changed to allow billing of truckers, *see* 89 Fed. Reg. at 14338–41, 14355; (3) the clear statements of the agency's proposal to bar billing of truckers in the NPRM, which was of course what led to commentary about the issue in the Final Rule, *see* 87 Fed. Reg. at 62345, 62348–50; and (4) the Council's own evident understanding, at least until it noticed the garbled paragraph in the preamble, that billing of truckers would no longer be permitted, *see* 89 Fed. Reg. at 14355 (quoting a Council comment strongly objecting to the "proposed bright-line regulations on which parties can be billed").[4]

*Third*, the Council claims (Br. at 43–46) that the Commission *failed to respond* substantively to significant rulemaking comments about the billed-parties

---

[4]     Responses to the OCEMA petition requesting that the effective date of the billed-parties rule be delayed did not indicate any confusion or problems with the rule's implementation, noting instead that ocean carriers were complying with it. *See* 89 Fed. Reg. 77788.

rule, not surprisingly focusing on its own comments, but in fact the NPRM and the Final Rule preamble are replete with examples of the agency doing just that. *See* 87 Fed. Reg. 62341, 62345, 62348–50; 89 Fed. Reg. 14330, 14338–41, 14355. The Council again attributes this alleged problem to the agency not understanding its own rule (Br. at 45–46), but the Commission has already explained the hollowness of that claim.

In any event, the Commission did respond in significant detail to objections from the Council and others about the billed-parties rule. *See* 89 Fed. Reg. 14330, 14339–40, 14355. In particular, the Commission addressed the concerns of those who did not support the rule, including ocean common carriers, explaining that limiting billing to those who had a contract for ocean carriage would be best for the supply chain because of the superior knowledge of the contract those parties had, even though "other parties may in some circumstances have more influence on whether demurrage or detention actually accrues." *Id.* at 14339. The Commission also recognized that "some regulated parties will need to change their business practices in order to comply with this rule," but stated that on balance the agency believed its chosen approach "would best benefit the supply chain," in which truckers play a critical role. *Id*. In a notable example of its responsiveness to comments on the issue, the FMC decided to add consignees as an alternative category of permissibly-billed parties, noting that they often are in the best position

to mitigate or dispute charges. *Id*. at 14340. And the Commission addressed the Council's argument that the billed-parties rule violated the APA because it unreasonably departed from the agency's prior "case-by-case" approach under the Interpretive Rule. *See* 89 Fed. Reg. at 14355. The Commission explained that it had previously addressed this issue, a reference to its discussion of carrier concerns earlier in the preamble, but then went on to note that it disagreed with the Council's view of APA requirements, stressing that Congress had specifically required the agency to issue rules under 46 U.S.C. § 41102(c) that "further define the prohibited practices" as to detention and demurrage charges. *Id*. The Commission also noted that the agency had complied with the APA's rulemaking procedures under 5 U.S.C. § 553, including solicitation and consideration of public comments on the matter. *Id*.

*Fourth*, the Council argues (Br. 46-49) that the Commission impermissibly *departed without adequate explanation* from its prior position on the billed-parties issue, but this claim is unpersuasive. Agencies can modify their rules as long as they display awareness they are doing so, *Sinclair Wyoming*, 114 F.4th at 711, and that awareness was certainly evident in this case. Indeed, it is inherent in the Congressional instruction that the Commission was following, which in effect directed the agency to further refine the regulation already present in the Interpretive Rule by adding a determination as to which parties may be billed for

demurrage and detention. *See* Public Law 117–146 at Sec. 7(b)(2). Congress

clearly envisioned that this more specific determination would co-exist with the

Interpretive Rule, and that was the impetus for the FMC's rule on the issue, as the

preamble made clear. 89 Fed. Reg. 14331. In this respect, the billed-parties rule is

comparable to the bright-line rules about the contents of demurrage and detention

invoices that Congress itself included in 46 U.S.C. § 41104(d), while at the same

time re-affirming the continuing validity of the general principles of the

Interpretive Rule, in 46 U.S.C. § 41104(a)(15). In addition, in responding to

commenters who did not favor the billed-parties rule, the Commission

acknowledged that it would likely require a change in some existing business

practices. 89 Fed. Reg. 14339. The agency thus displayed adequate awareness that,

in following Congress's direction, it was refining its approach.[5]

---

[5]     Even if the Council's explanation-related second through fourth "arbitrary and capricious" claims had any merit, it has shown no prejudice from those alleged errors, as it must to obtain relief, under the harmless error rule. *See* 5 U.S.C. § 706 (where courts review agency action, "due account shall be taken of the rule of prejudicial error"). In addition, those claims allege deficiencies that could be cured with more agency explanation, so remand without vacatur would be the appropriate remedy. Courts may decline to order vacatur based on the likelihood that an agency can cure deficiencies on remand and the potential disruptive consequences of vacatur. *See Standing Rock Sioux Tribe v. U.S. Army Corps of Eng'rs*, 985 F.3d 1032, 1051 (D.C. Cir. 2021). Here, a deficiency in explanation could be cured, but vacating the rule would risk disrupting the shipping industry.

### III.    The Council Lacks Standing for its NEPA Claim, and in Any Event the Commission's Environmental Analysis Was Reasonable

The Commission's environmental analysis of the billed-parties rule under NEPA was reasonable, and the Council fails to show that it was "arbitrary and capricious" under the deferential standard of review applicable to such claims. *See* Order Denying Petition for Review of the Commission's Environmental Assessment and Finding of No Significant Impact in the Demurrage and Detention Billing Requirements NPRM (Jan. 6, 2023) (NEPA Order) (JA___); Br. at 49–55 (arguing that the NEPA Order was incorrect).

First, the Council lacks standing for the same reasons explained above with regard to petitioner's principal claims. *See* supra pp. 20–22.  The Council has failed to provide evidence of harm to any identified member. The declaration it does provide briefly addresses environmental concerns and alleges that the billed-parties rule will cause congestion and pollution, Br. Exh. B at 5, but fails to provide evidence of any specific or concrete harm to members actually flowing from the rule. In addition, the Council appears to lack standing because it fails to argue that the NEPA Order presents a legal violation this Court can redress. Because NEPA has no judicial review provision, NEPA claims are often reviewed under the APA. *See Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 882 (1990); *Beyond Nuclear, Inc. v. NRC*, 113 F.4th 956, 966 (D.C. Cir. 2024) ("When reviewing NEPA challenges under the APA's arbitrary or capricious standard, we

will not 'flyspeck' an agency's environmental analysis for minor deficiencies," but will uphold the agency's decision if it is "reasoned and rational" (cleaned up)). Yet the Council fails to argue that the NEPA Order violated the APA or any other non-NEPA statute.

In addition, the Council lacks standing for its NEPA claim because it has failed to allege an injury that falls within the zone of interests protected by the statute. "The zone of interests protected by the NEPA is, as its name implies, environmental; economic interests simply do not fall within that zone." *Gunpowder Riverkeeper v. FERC*, 807 F.3d 267, 274 (D.C. Cir. 2015); *see Viasat, Inc. v. FCC*, 47 F.4th 769, 779-80 (D.C. Cir. 2022). Simply having an economic interest or motive does not by itself prevent a party from falling within the zone of interests for a NEPA claim, but the party must assert some genuine environmental harm. *Id*. The Council fails to do so. The declaration it provides along with its brief includes assertions that the Council and its members have sustainability goals, and that the billed-parties rule will cause environmental harm by increasing port congestion. *See* Br. Exh. B at 4-5. But the Council provides nothing beyond speculation that simply altering who may be billed for equipment late fees will have such a negative effect on overall port operations, despite the rule having been in effect for more than four months at the time the declaration was signed. And even if the rule did have such an effect, the Council has not shown how this would

cause the kind of tangible environmental harm to the Council or its ocean carrier

members, as opposed to human beings, that is necessary to maintain a NEPA

claim.

Even if the Court had jurisdiction to consider the NEPA claim, the Council

has failed to show that the Commission's action was unlawful. In reviewing NEPA

claims, courts ask only whether agencies have taken "a 'hard look' at the

environmental consequences" of their actions. *Beyond Nuclear*, 113 F.4th at 969

(cleaned up). Here, the Commission prepared an Environmental Assessment (EA)

that carefully reviewed potential impacts and was consistent with NEPA. *See*

NEPA Order at 2-4; Environmental Assessment on Docket FMC-2022-0066 and

Finding of No Significant Impact (Oct. 7, Nov. 22, 2022) (JA__); 42 U.S.C. §

4336(b)(2). The Council argues that the EA failed to account for how much the

billed-parties rule would increase congestion and pollution, and that the agency

should have prepared the more substantial Environmental Impact Statement

required before a major federal action that will have a significant effect on the

human environment. Br. at 50; *see* 46 C.F.R. § 504.6(a).[6]

---

[6]     There may be some uncertainty as to the status of NEPA regulations in light
of a recent decision, *see Marin Audubon Soc'y v. FAA*, No. 23-1067, ___ F.4th
___, 2024 WL 4745044 (D.C. Cir. Nov. 12, 2024), but that does not affect the
permissibility of the Commission's EA, which was consistent with 42 U.S.C. §
4336(b)(2).

However, the Council offers no evidence or persuasive explanation that the billed-parties rule will actually have a significant environmental impact. The Council claims (Br. at 51–53) the FMC was wrong to determine that the rule would not affect when or how much ocean carriers could assess in demurrage and detention charges, and so would not undermine the incentive principle or increase congestion, because, the Council says, simply not being able to bill truckers will have those effects. But the Commission carefully evaluated the Council's arguments, concluding that the proposed rule was consistent with the incentive principle because carriers and others could still assess the demurrage and detention charges, and the NEPA Order explained in some detail the ways in which the flow of freight would still be incentivized in the supply chain. NEPA Order at 3. The Commission also concluded that the EA was sufficient because it complied with all applicable requirements, and its determination of no significant environmental impact was correct because the rule in question was one about invoicing practices that would not contribute to port congestion. *Id*. at 4. These determinations were rational and permissible under the "arbitrary and capricious" standard of review.[7]

---

[7]    The Council requests (Br. at 55) that the billed-parties rule be vacated if the Court finds a NEPA violation, but that remedy would not be appropriate here. As noted earlier, courts may decline to order vacatur depending on an agency's ability to cure deficiencies on remand and the disruptive consequences of vacatur. *See Standing Rock Sioux Tribe*, 985 F.3d at 1051. Here, any NEPA deficiency could be cured on remand, but vacating the rule would risk disrupting the shipping industry.

**IV.    The Council's Request to Add Inquiry Emails to the Administrative Record Should Be Denied**

The Court should deny the Council's earlier motion that several informal email interactions with FMC staff after publication of the Final Rule be added to the administrative record. *See* Br. at 55–57; Order (Sept. 4, 2024) (Doc. No. 2073037) (deferring issue to merits briefing). Those inquiries alerted the Commission's Office of General Counsel (OGC) to an apparent ambiguity in the preamble to the Final Rule, which was the subject of the later clarifying Correction. *See* FMC's Response to Motion to Complete Administrative Record (FMC's Response) (July 1, 2024) (Doc. No. 2062551). But the Council has failed to show that it will suffer harm if these guidance-oriented inquiries are not included in the record, and doing so could discourage open communication with the agency. In addition, the inquiries were not "before" the FMC Commissioners within the meaning of 28 U.S.C. § 2112(b).

The Commission is entitled to a presumption of regularity in designating the administrative record. *See Transp. Div. of the Int'l Ass'n of Sheet Metal v. Fed. R.R. Admin.*, 10 F.4th 869, 878 (D.C. Cir. 2021). And "[t]o overcome the strong presumption of regularity to which an agency is entitled, a party must set forth concrete evidence the supplemental documents were indeed before the agency at the time of its decision." *Safe Skies Clean Water Wisc., Inc. v. U.S. Air Force*, Civ. No. 21-634, 2022 WL 22626434, at *1 (D.D.C. Sept. 30, 2022) (cleaned up).

45

The Council has failed to justify granting the relief it seeks despite the above presumption. The Council already has its own emails and it has again placed them before the Court. *See* Br. Exh. A. But the Council has still not shown any prejudice from their exclusion from the record, as it must to obtain relief, under the harmless error rule. *See* 5 U.S.C. § 706 (where courts review agency action, "due account shall be taken of the rule of prejudicial error").

The specific content of the Council's emails also does not support its claim that they belong in the administrative record. The Council's then-CEO Butler told FMC General Counsel Hughey that he wanted the Commission to correct what he saw as the inconsistency between the preamble and the rule text. *See* Br. Exh. A at 6–7. Mr. Butler and Mr. Hughey exchanged several emails on this subject. Although Mr. Hughey did initially endeavor to address the apparent ambiguity, the ultimate focus of his response was to suggest options to have the Commission itself address the issue. *See id*. at 2. These inquiries involved only FMC staff, and there was no indication that the emails should or would be shared with the Commission itself.

The Council's position here could undermine the interest in open government. If any informal communication with agency staff could potentially become part of an administrative record, even if it was never provided or described in any detail to the agency decision-maker, parties might hesitate to engage in such

interactions. For similar reasons, it would not be appropriate to add the other email inquiries that the Council seeks to have added to the record. There is no reason to believe the other inquirers intended their informal communications made only to OGC staff to be made public as part of an administrative record. Doing so could again inhibit open communication with the agency, particularly in light of concerns about retaliation in the shipping industry. *See* 46 U.S.C. § 41102(d) (barring common carriers and others from retaliating against shippers, motor carriers, and others); *see also* FMC Policy Statement on Retaliation (Dec. 28, 2021), Docket No. 21-15, available at https://www2.fmc.gov/ReadingRoom/docs/21-15/21-15_Policy_Retaliation.pdf/.

Applicable authority does not support the Council's position. The email inquiries here were not "before" the agency under the basic statutory standard governing challenges like this one. *See* 28 U.S.C. § 2112(b). The Council repeatedly conflates informal communications with OGC with materials submitted to the FMC decision-maker, the Commissioners. But the email inquiries were never made available to the Commissioners, quoted to them, or described to them in any detail. And a case that the Council itself cites suggests a standard encompassing materials available to the ultimate agency decision-maker, but not materials provided only to agency staff. *See* Br. at 55 (citing "*Walter O. Boswell Mem'l Hosp. v. Heckler*, 749 F.2d 788, 792 (D.C. Cir. 1984) ('[R]eview is to be

47

based on the full administrative record that was *before the Secretary at the time he made his decision*.').)" (emphasis altered)). The Council claims that the inquiries "caused" the Correction, Br. at 56, but as the FMC explained, the inquiries simply "helped" the agency issue a Correction in a timely way, 89 Fed. Reg. 39569, 39570.[8]

In light of the above, the Council's motion should be denied. In addition, the Council adds a new request that, if its motion is granted, it be permitted to "move for supplemental briefing regarding the substance" of the email inquiries. Br. at 57. But the Council provides no support for that request, which would seem to entail a burdensome, tangential process that would be remote from the issues that are properly before the Court. The Council's request should be denied.

\*    \*    \*

---

[8]    The Council appears to have abandoned its prior argument for inclusion of the email inquiries under a standard encompassing materials "indirectly considered" by the ultimate decision-maker. *See* FMC's Response at 12-15.

48

## CONCLUSION

Because the World Shipping Council has failed to provide sufficient evidence of standing for its claims and failed to show that the Commission's regulation was impermissible, its petition should be denied.

Respectfully submitted,

/s/ *Harry J. Summers*

PHILLIP "CHRIS" HUGHEY
General Counsel
HARRY J. SUMMERS
Attorney-Advisor
FEDERAL MARITIME COMMISSION
800 N. CAPITOL ST., N.W.
WASHINGTON, D.C. 20573
PHONE: (202) 523-5740
phughey@fmc.gov
December 2, 2024          hsummers@fmc.gov

# CERTIFICATE OF COMPLIANCE

I hereby certify that the foregoing brief complies with the type-volume limitation and type-style requirements of Fed. R. App. P. 32(a)(7)(B) and Circuit Rule 32(e)(2)(B), because it contains 11,705 words, excluding the parts of the brief that are excluded by Fed. R. App. P. 32(f) and Circuit Rule 32(e)(1). The brief also complies with the typeface and type-style requirements of Fed. R. App. P. 32(a)(5) and 32(a)(6) because it was prepared using Microsoft Word 14-point Times New Roman font.

/s/ *Harry J. Summers*
HARRY J. SUMMERS
*Attorney-Advisor*
FEDERAL MARITIME COMMISSION
800 N. Capitol St., N.W.
WASHINGTON, D.C. 20573
PHONE: (202) 523-5740
hsummers@fmc.gov

## CERTIFICATE OF SERVICE

I hereby certify that on this 2nd day of December, 2024, I electronically filed the foregoing brief with the Clerk of the Court for the U.S. Court of Appeals for the District of Columbia Circuit by using the appellate CM/ECF system. The participants in the case are registered CM/ECF users and service will be accomplished by the appellate CM/ECF System.

<u>/s/ Harry J. Summers</u>
HARRY J. SUMMERS
*Attorney-Advisor*
FEDERAL MARITIME COMMISSION
800 N. Capitol St., N.W.
WASHINGTON, D.C. 20573
PHONE: (202) 523-5740
hsummers@fmc.gov